## Swineheart v. Hertzog et al.

W. B. Freed, for defendant and rule; Darlington Hoopes, contra.

SHANAMAN, J., Feb. 8, 1929.—Plaintiff sued defendants for damages suffered in an automobile collision and obtained a verdict. The defendants consisted of an actual driver and the executors of his father's estate, as the plaintiff charged that the defendant driver was representing his father at the time of the accident. The defendants have taken rules for judgment n. o. v. and for a new trial.

Plaintiff was driving a Moon touring-car in a northerly direction along the State highway leading from Boyertown to Bally. Defendant was driving an Overland touring-car in a westerly direction along the Barto Road, which runs into the said highway. At the intersection, the Barto Road divides into a fork, i. e., into two roadways, one of which turns southerly into, and the other northerly into, the State highway. The two termini of the Barto Road thus created are about 150 feet apart. Defendant followed the southerly fork. At the same time that plaintiff reached the intersection of the State highway

and the southern fork of the Barto Road, the defendant, by plaintiff's own testimony, was coming from plaintiff's right toward the intersection, and was from four to six feet from it. Both cars continued and collided.

Plaintiff testified that he was driving on the right side of the highway, and that he immediately applied his brakes on seeing defendant, but that defendant did not seem to slow up at all, but shot right at him without any decrease of speed, and hit him with enough force to drive him across the road and smash his car against a telegraph pole, badly injuring both sides of plaintiff's car. Plaintiff testified that he had used the road at this point perhaps eight times during the previous two months, and had also used the road at that point on a few occasions during the previous three or four years. Being asked, "You knew that there was an intersection below there?" plaintiff replied, "I did not. I knew there were two roads coming out, but I didn't know it was at that place." (Notes of testimony, page 10.) Plaintiff testified that he could not see the intersection because of a high bank covered with brush at the point. He said, "I might have noticed it previously (the intersection), but made no mental recollection." (Notes, page 10.) He testified further that his car was running from one to two feet to the right of the median white line of the State highway until he saw the defendant, when he swerved slightly to the left to avoid defendant, and that he did not, and could not, see defendant before plaintiff was right at the intersection. Plaintiff admitted that you might possibly see the intersecting road several hundred feet back from the intersection in the direction from which plaintiff was coming. (Notes, page 15.) He said that he did know of the farther branch or northern fork of the Barto Road, but had "never noticed the left branch (southern)." (Notes, page 17.) He said, "I didn't know there was a triangle until after the accident." (Notes, page 17.) Plaintiff also said that the Barto Road—that is, the fork on which defendant came and which plaintiff had never noticed before—appeared to him to be "just slightly wider than the macadam of the State highway" (Notes, page 17), which he said was 18 feet wide. (Notes, page 3.) His witness, Morrison, testified that the southern fork of the Barto Road was approximately 14 feet wide, from 12 to 14 feet. (Notes, page 46.) Plaintiff's witness, Wayman, placed defendant's car a half a car's length from the macadam when the plaintiff's car was half on the intersection. There are three feet of gravel on each side of the macadam of the State highway. (Notes, page 46.) Plaintiff also testified that defendant could have, in his opinion, avoided the collision by turning sharp left. (Notes, page 48.) Such was the plaintiff's testimony.

Defendant admitted that he was familiar with the intersection, and said he could not see more than 50 feet up the State highway to the left when he reached the intersection. The testimony quoted hereinabove would justify an inference that the defendant did not approach the intersection and drive his car with the care, skill and control which a reasonably careful driver should have exercised under the circumstances and conditions. Nor does the case show such contributory negligence on plaintiff's part as could, in our opinion, be determined, as a matter of law, against him. Defendant has not pressed his objection to the sufficiency of the proof of agency in the case as to the representation by the defendant driver of his father. Defendant's rule for judgment *n. o. v.* must, therefore, be dismissed. We are, however, of opinion that the case ought to be retried.

The two cars approached the intersection at substantially the same time. Plaintiff was four to six feet ahead of defendant. Defendant came from the right, and in this case he had the right of way. It is not a matter of feet or

inches. If plaintiff cannot reasonably expect to get across without a collision in the event that defendant keeps coming on at a reasonable rate of speed, plaintiff must halt and wait for the car coming from the right to pass, even though the plaintiff's front wheels may have reached the intersection a brief moment before the defendant's front wheels. Such is the rule of the road: Alperdt v. Paige, 292 Pa. 1. It may be true that plaintiff could not see the defendant's car until he reached the intersection, but the plaintiff's own testimony is quite convincing that he knew, or should have known, of the intersection and of the fact that it was concealed and dangerous. He had crossed it perhaps eight times within the two months prior to the accident and also upon some occasions before that. He knew of it, and said he knew of it, but said that he knew only of the one fork, the farther one, and had never noticed the other, and that he had never noticed the triangle 150 feet long between the two forks. This in face of the fact that he had traveled both ways along the road over the intersection and in face of the fact that the fork up which the defendant came is from 12 to 14 feet wide and was stated by plaintiff to appear to him to be as wide as the macadam of the State highway. The road was plainly visible to one passing by it, as appears both from the testimony and from the photographs admitted in evidence. It is quite important to note that plaintiff, in explaining his ignorance of the intersection, said (Notes, page 10) : "I knew there were two roads coming out, but I didn't know it was at that place." But, at page 17 of the notes of testimony, he said: "I noticed the road that went out to the right, yes, sir;" and, being asked whether he had seen the fork up which defendant came, he said: "No, sir, I did not;" and, being asked whether he had never seen it, he said: "No, sir." At that point he also said, "I knew the right branch went in, yes, sir;" and, being asked whether he had ever noticed the left branch, he again said: "No, sir, I didn't know there was a triangle until after the accident." This self-contradiction casts a most dubious light on plaintiff's explanation of the accident. Furthermore, it is indeed difficult to conceive that he, as a driver, never marked that danger and did not know of that road. It seems quite impossible to conclude that he should not reasonably have known of it upon his own testimony.

Defendant testified that he looked both ways at the intersection and saw no one and proceeded as far as the middle of the State highway, when he saw plaintiff's car coming very fast from defendant's left, that defendant sounded his horn and the cars collided, that defendant first saw plaintiff when plaintiff was about 90 feet away, and that defendant was traveling about 15 miles an hour up the Barto fork, which is, as he testified, a steep grade. Defendant's witness, Walters, apparently impartial, testified (Notes, pages 63, 64) that plaintiff began to apply his brakes 75 feet from the intersection and kept them on all the way down to the accident, his car gradually working over from the right side of the road, where he had been driving, up till the point of the collision, when the plaintiff's car had got all the way over on the left side of the highway, and that this passage, 75 feet long, left a plain skid-mark of equal length. This testimony, if believed, is very important, as contradicting plaintiff's theory of the accident, and furnishing an explanation for the plaintiff's car being lodged against the telegraph pole, other than the plaintiff's explanation, which was that the speed of defendant's car was so great as to force plaintiff clear across one-half of the macadam, or nine feet, and across the three feet of gravel to the left of it. Defendant's witness, Fronheiser, said plaintiff was going 40 miles an hour, that she heard the brakes screeching as plaintiff passed her house 75 feet from the intersection,

and saw the marks where his wheels started to cross the white line about 75 feet from the intersection. Defendant's witness, Clyde Fronheiser, saw the skid-marks, which he said started in front of Ralph Fronheiser's house, placed 75 feet away. Defendant's witness, Mrs. Fronheiser, was contradicted by a statement she had made on the point of skid-marks, but was not contradicted as to her testimony that she heard the plaintiff's brakes go on, and screech, when he was in front of her house, 75 feet from the accident.

It appears that both plaintiff and defendant approached an intersection which they knew, or should have known, was dangerous; that they approached at the same time, and that the defendant approached from plaintiff's right. The defendant, having the right of way, and the plaintiff, not having the right of way, were, nevertheless, both under an equal duty to exercise all the caution which such a dangerous intersection demands. If the testimony sustains an inference of defendant's negligence, it, with equal force, convinces of plaintiff's negligence. Moreover, the verdict for plaintiff necessarily involves a disbelief of the testimony of defendant's witnesses as to the skid-marks, beginning 75 feet from the accident and continuing thereto, and of their testimony as to the screeching of the brakes of plaintiff's car 75 feet from the intersection, and the gradual passage of the plaintiff's car, driven by plaintiff, from the right side of the highway, at a point 75 feet from the accident, completely over to the left side, just prior to the collision. This testimony was uncontradicted, except by the written statement of one of the witnesses, as to the matter of skid-marks.

"While the ascertainment of the underlying facts and the drawing of the inferences and final conclusions therefrom are for the jury, even where strong conflicting oral evidence is produced by a defendant, yet, in every such instance, a grave responsibility rests upon the trial judge to see to it that no verdict contrary to the weight of the evidence or shocking to judicial conscience is allowed to stand, no matter how many new trials must be granted in order to effect the ends of justice; and this will always be so until the fundamental law, which ordains that trial by jury shall be as heretofore, is changed to give greater power, in the realm of fact, to the judiciary:" Maloy v. Rosenbaum Co., 260 Pa. 466, 472. A mere judicial disagreement with a verdict, even on strong grounds, does not warrant a retrial. Where, however, a successful plaintiff has denied knowledge of a dangerous intersection, and his own testimony indicates clearly that he should have known of it, and must have known of it, unless he were indeed too careless to note it, and indicates further, by his own self-contradictions, that he probably did know of it, and where the testimony of disinterested witnesses is that the accident occurred in the way that defendant alleges, and not in the way that plaintiff contends, and there is little or no contradiction of the physical facts recited in their testimony, a strong, persisting conviction may be created in the mind of the court that the plaintiff was himself guilty of contributory negligence, and a similar doubt as to the validity of his explanations arises in the judicial mind. When such conviction has not been shaken, and such doubt has not been resolved by a most careful study of the testimony, with a view to upholding the verdict, if possible, the court should, if it feels that justice demands it, grant a retrial. We are of opinion that the present is such a case.

And now, to wit, Feb. 8, 1929, rule for judgment n. o. v. discharged, and rule for new trial made absolute.

From Charles K. Derr, Reading, Pa.